**Opinion filed June 30, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00217-CV

_____

## IN THE INTEREST OF B.F.K., A CHILD

**On Appeal from the County Court at Law**

**Midland County, Texas**

**Trial Court Cause No. FM 47,190**

### M E M O R A N D U M   O P I N I O N

Peggy Jo Kayser, appellant, is the mother of B.F.K. Eugene Kayser, appellee, is the father of B.F.K. The trial court approved and signed their agreed final decree of divorce on October 15, 2009. Subsequently, appellant filed a petition to modify the parent-child relationship on January 11, 2010. This is an appeal from the trial court's judgment after a hearing on appellant's petition. We reverse and remand.

#### *Background Facts*

In the agreed final decree of divorce, appellant and appellee were appointed joint managing conservators of B.F.K., who was fourteen at the time. B.F.K. was to spend alternate weeks with each parent. The final decree noted that the parents had agreed that appellee would maintain health insurance for B.F.K. and would pay the $650 per month tuition for B.F.K. to attend Midland Christian School.

The agreed final decree also provided for alimony to be paid to appellant. Appellee agreed to pay alimony as follows:

(1) $5,000.00 per month for a period of 24 months, commencing June 1, 2009, with the 24th and final payment being due May 1, 2011; and

(2) Thereafter, commencing June 1, 2011, the monthly contractual alimony payment will be $6,031.75 for a period of 63 months, until a total of $500,000.00 is paid in full.

In her petition to modify parent-child relationship, appellant asserted that the agreed orders relating to possession of the child had become unworkable and requested that the court order that appellee have visitation with B.F.K. at a designated place on dates and times set by the court or, alternatively, that the court order that appellee's periods of visitation be supervised by a person chosen by the court. Appellant also alleged that appellee had exhibited a pattern of child neglect and requested that the court deny appellee access to B.F.K. In addition, appellant requested that the child support payments previously ordered should be increased. The hearing on appellant's petition was held on June 18, 2010.

Appellant states in her brief that counsel for appellee, in his opening statement, had stipulated that appellee "should pay child support, at the maximum of $1,500.00 per month in child support." The statement by appellee's counsel was as follows:

I have my client's permission to agree that *if* the Court changes custody in this case, that my client makes enough money to *cap out* at $1,500.00" (emphasis added).

The court heard testimony from appellant and appellee. Appellant testified that appellee had not had his daughter overnight since the beginning of November 2009, that the child was upset with her father for not visiting with her, that B.F.K. had told her that appellee had remarried and told B.F.K. that she was not to come to his house, and that appellee had cancelled counseling sessions with B.F.K. Appellee testified that he loved his daughter, wanted to have a relationship with her, and wanted her to visit with him in his home. However, appellee had remarried in May 2010, and his daughter refused to come to his home if the new wife was present. Appellee testified that he had taken his daughter to lunch on occasion and given her spending money when she went on a trip. He also said that he had paid $5,400 for his daughter and her mother to attend a modeling audition, $650 monthly tuition to the Midland Christian

2

School, $90 periodically for cheerleading tumbling classes, and $150 a month for his daughter's cell phone.

The judge then interviewed B.F.K. in chambers with the court reporter present. The interview was not recorded. Upon returning to the court, the judge stated that he was very impressed with B.F.K. but that he was convinced that B.F.K. was not going to have anything to do with appellee's new wife even though B.F.K. had not met the new wife. The judge then stated that he was not going to order court-ordered visitation. And because there would be no court-ordered visitation for appellee, the judge concluded that appellee would not have to pay child support or the $650 monthly tuition to B.F.K.'s school. The judge observed that the $650 monthly tuition requirement was "part of the negotiated agreement settlement of May the 19th of 2009, because that agreement and settlement was based upon a fair exchange of the child week on and week off."

As for the child's concern about continuing to attend Midland Christian School, the judge said that he had told B.F.K., "[Y]our mother is receiving $5,000.00 a month. She can afford to send you to Midland Christian if she desires to do so. I am not going to order your father to do that since he has no possibility of Court-ordered visitation."

In its findings, the court found that appellant should be named the parent with the sole right to determine the primary residence of the child, that the child refused to visit with appellee and his new wife, that no visitation should be ordered, that appellee should not pay child support although he had stipulated that he had the ability to pay $1,500 per month in child support, and that appellee should not pay the tuition to Midland Christian School. The court then ordered that appellee was not required to pay child support to appellant for B.F.K., that he was not required to pay the school tuition, and that he was not to have possession of or visitation rights with B.F.K.

*Issues*

Appellant presents two issues: (1) the trial court abused its discretion by not requiring appellee to pay any child support for his fifteen-year-old child and (2) the trial court abused its discretion in removing the agreed requirement in the divorce decree that appellee would pay the tuition expenses of the child at Midland Christian School.

*Analysis*

A parent has a duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education. Tex. Fam. Code Ann. § 151.001(a)

3

(Vernon 2008). Section 154.011 provides that a court may not render an order that conditions the payment of child support on whether a managing conservator allows a possessory conservator to have possession of or access to a child. *See also Id.* § 153.001.

In her petition, appellant requested that the court deny appellee "access to the child." Although the court encouraged appellee to have dinner dates and other visits with his daughter, the court essentially granted appellant's request. And the court's order implicitly conditioned the payment of child support, or rather the nonpayment, on the fact that appellee would have no possession or access to B.F.K. except for brief visits consented to by B.F.K.

In the case of *In re A.N.H.*, 70 S.W.3d 918 (Tex. App.—Amarillo 2002, no pet.), the trial court signed an agreed order on motion to modify the suit affecting the parent-child relationship. In the agreed order, the mother was appointed managing conservator and the father was appointed possessory conservator. Also included in the agreement was a provision (1) denying the father visitation privileges with his daughter "until such time [she] initiates contact with [him] and/or expresses the desire to exercise visitation with" her father and (2) relieving the father of having to make child support payments "until such time as visitation resumes between" the father and the child. 70 S.W.3d at 919.

Seeking child support payments, the mother subsequently filed a petition to modify the provision. The trial court denied relief. The court of appeals observed that this case involved a collateral attack on the provision in the agreed final order. The mother argued that the provision violated public policy and was void. The court agreed, holding that the provision was void because it violated the public policy set forth in Section 153.001(b): "A court may not render an order that conditions the right of a conservator to possession of or access to a child on the payment of child support."

The father's visitation rights in *In re A.N.H.* were not contingent upon his payment of support; they were contingent upon the personal desire of his minor daughter to see him. Appellee's visitation and possessory rights were denied here because of his daughter's personal desires. In effect, however, the court's order conditioned appellee's support of B.F.K. upon his ability to exercise visitation and possession rights. Because the order violates public policy, we sustain appellant's first issue. *See also Seidel v. Seidel*, 10 S.W.3d 365 (Tex. App.—Dallas 1999, no pet.); *Thurman v. Fatherree*, 325 S.W.2d 183, 186 (Tex. Civ. App.—San Antonio 1959, writ dism'd).

Section 154.125(b) provides that, if the parent's monthly resources are not greater than $7,500, the court shall presumptively order the parent obligor to pay 20% of those net resources. The amount of child support payments established by the child support guidelines is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child. Section 154.122. The presumption is rebuttable by evidence that shows a variance is in the child's best interests. Section 154.123(a). In determining whether to vary from the guidelines, the court shall consider evidence of all relevant factors, including those factors listed in Section 154.123(b).

Although we need not address appellant's second issue, we note that, in appellee's counsel's opening statement, he stated that appellee made enough money for any monthly child support to "cap out at $1,500.00." And during his cross-examination of appellant, counsel for appellee gave notice to appellant that, if appellee were ordered to pay $1,500 in monthly child support to appellant, appellee would ask the court to order that appellee did not have to pay the $650 monthly tuition payment. Appellee's counsel also reminded appellant that appellee paid B.F.K.'s monthly cell phone payment of $150. In her petition, appellant had requested that the previously ordered child support be increased. The only previously ordered payments with respect to B.F.K. were the monthly tuition of $650 and the payments for health insurance on B.F.K. These matters, as well as the father's possession and visitation rights, may be reconsidered in the retrial.

*Conclusion*

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

TERRY McCALL

JUSTICE

June 30, 2011

Panel[1] consists of: Wright, C.J.,
McCall, J., and Hill, J.[2]

---

[1]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[2]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.